IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,

      v.

TITANIUM METALS CORPORATION

              Defendant.

Civil Action No.   2:14-cv-749-MMD-VCF

**CONSENT DECREE**

CONSENT DECREE

## TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ................................................................................ 2

II.     APPLICABILITY ................................................................................................. 3

III.    DEFINITIONS ..................................................................................................... 4

IV.     CIVIL PENALTY ................................................................................................. 6

V.      COMPLIANCE REQUIREMENTS ....................................................................... 7

VI.     REPORTING REQUIREMENTS ........................................................................ 12

VII.    STIPULATED PENALTIES ............................................................................... 15

VIII.   FORCE MAJEURE ............................................................................................ 17

IX.     DISPUTE RESOLUTION ................................................................................... 19

X.      INFORMATION COLLECTION AND RETENTION ......................................... 22

XI.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS .............................. 24

XII.    COSTS .............................................................................................................. 26

XIII.   NOTICES .......................................................................................................... 26

XIV.    EFFECTIVE DATE ........................................................................................... 28

XV.     RETENTION OF JURISDICTION ..................................................................... 28

XVI.    MODIFICATION ............................................................................................... 28

XVII.   TERMINATION ................................................................................................ 29

XVIII.  PUBLIC PARTICIPATION ................................................................................ 30

XIX.    SIGNATORIES/SERVICE ................................................................................. 30

XX.     INTEGRATION ................................................................................................. 31

XXI.    FINAL JUDGMENT .......................................................................................... 31

XXII.   APPENDICES ................................................................................................... 31

WHEREAS, Plaintiff, the United States of America ("United States"), on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint ("Complaint") in this action concurrently with this Consent Decree (a) alleging that Defendant Titanium Metals Corporation ("TIMET" or "Defendant"), the owner and operator of a titanium manufacturing facility in Henderson, Nevada ("Facility"), violated various provisions of the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2601, *et seq.*, and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, *et seq.* and their implementing regulations, and (b) seeking injunctive relief and penalties under Section 3008 of RCRA, 42 U.S.C. § 6928, and Section 17 of TSCA, 15 U.S.C. § 2616;

WHEREAS, the Facility is a manufacturing plant in which certain chemical processes are undertaken to manufacture titanium, which is sold for a variety of uses in industry and results in the generation of corrosive liquids and the inadvertent manufacture of polychlorinated biphenyls ("PCBs") as a byproduct in certain of its chemical processes;

WHEREAS, the manufacture, handling, storage, and disposal of these PCBs and corrosive liquids are the focus of the alleged violations under TSCA and RCRA in this case, and the Complaint includes specific allegations that TIMET violated TSCA Sections 6(e) and 15, 15 U.S.C. §§ 2605(e) and 2614, respectively, and regulations promulgated under TSCA Section 6(e), 40 C.F.R. Part 761, pertaining to the illegal manufacture, disposal, and storage of PCBs, and failure to clean up PCB waste;

WHEREAS, the Complaint includes specific allegations that TIMET violated various applicable implementing regulations of RCRA in 40 C.F.R. Parts 260-279 and corresponding state regulations adopted pursuant to the federally authorized State of Nevada hazardous waste

CONSENT DECREE

management requirements pertaining to the treatment, storage, disposal, placement, and handling of hazardous and non-hazardous waste at the Facility;

WHEREAS, Defendant does not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint;

WHEREAS, the objective of the United States and TIMET (collectively, the "Parties") is to assess TIMET penalties and establish injunctive relief whereby TIMET shall inspect the Facility and modify certain operating practices with respect to its management of the Facility and recordkeeping for the Facility;

WHEREAS, by agreeing to entry of this Consent Decree, and except as otherwise stated in this Consent Decree, TIMET makes no admission of law or fact with respect to the allegations in the Complaint and neither admits nor denies any non-compliance or violation of any law or regulation identified therein; however, for the purposes of avoiding litigation between the Parties, TIMET agrees to the requirements of the Consent Decree; and

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I (Jurisdiction and Venue), and with the consent of the Parties,

IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.  JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action and over the Parties, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355; TSCA Section 17, 15 U.S.C. § 2616;

and RCRA Section 3008(a), 42 U.S.C. § 6928(a).  Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1331, 1345, 1355, 1391(b)-(c), and 1395(a); TSCA Section 17(a)(2)(B), 15 U.S.C. § 2616(a)(2)(B) (which establishes venue "in the United States district court for the judicial district wherein the defendant is found or transacts business"); and RCRA Section 3008(a)(1), 42 U.S.C. § 6928(a)(1) (which establishes venue "in the United States district court in the district in which the violation occurred") because the violations alleged in the Complaint are alleged to have occurred in, and Defendant conducts business in, this judicial district.  For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree, any such action to enforce this Decree, and over Defendant, and consents to venue in this judicial district.

2.      For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Sections 6(e) and 15 of TSCA, 15 U.S.C. §§ 2605(e) and 2614, respectively, and Sections 3002, 3004, 3005, 3006, and 3014 of RCRA, 42 U.S.C. §§ 6922, 6924, 6925, 6926, and 6935, respectively.

## II.  <u>APPLICABILITY</u>

3.      The obligations of this Consent Decree apply to and are binding upon the United States and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

4.      No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of this Decree are implemented.  At least thirty (30) Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the

proposed written agreement, to EPA Region IX, the United States Attorney for the District of Nevada, and the United States Department of Justice, in accordance with Section XIII (Notices). Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

5.      Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III.   DEFINITIONS

7.      Terms used in this Consent Decree that are defined in TSCA or RCRA, or in regulations promulgated pursuant to TSCA or RCRA, shall have the meanings assigned to them in TSCA or RCRA, or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.   "April 2009 NOV" shall mean the Notice of Violation sent on April 15, 2009 by Mr. Loren Henning, Manager, EPA RCRA Enforcement Office, to Mr. Craig Galli, Holland & Hart, LLP, outside counsel for TIMET (attached hereto as Appendix 1), in which EPA alleged that TIMET violated various provisions of RCRA and TSCA and their implementing regulations at the Facility;

b.  "Complaint" shall mean the complaint filed by the United States in this action;

c.  "Consent Decree" or "Decree" shall mean this decree and all appendices attached hereto (listed in Section XXII (Appendices));

d.  "Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

e.  "Defendant" shall mean Titanium Metals Corporation ("TIMET");

f.  "Effective Date" shall have the definition provided in Section XIV (Effective Date);

g.  "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

h.  "Facility" shall mean TIMET's facility located at 181 North Water Street, Henderson, Nevada 89015, EPA I.D. # NVD 009 562 471;

i.  "HP-1" and "HP-6" shall mean those surface impoundments at the Facility labeled as HP-1 and HP-6 on the map attached hereto as Appendix 2;

j.  "Interest" shall mean the interest rate specified in 28 U.S.C. § 1961;

k.  "NDEP" shall mean the Nevada Division of Environmental Protection;

l.  "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

m.  "Parties" shall mean the United States and TIMET;

CONSENT DECREE

5

n.   "Section" shall mean a portion of this Decree identified by a Roman numeral, unless otherwise provided;

o.    "United States" shall mean the United States of America, acting on behalf of EPA; and

p.   "Work" shall mean all activities and obligations Defendant is required to perform under this Consent Decree, except the activities required under Section X (Information Collection and Retention).

## IV.  CIVIL PENALTY

8.   Within thirty (30) Days after the Effective Date of this Consent Decree, Defendant shall pay the sum of $14,000,000 as a civil penalty.

9.   Defendant shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the United States Department of Justice in accordance with written instructions to be provided to Defendant, following entry of this Decree, by the Financial Litigation Unit of the United States Attorney's Office for the District of Nevada.  At the time of payment, Defendant shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to this Decree in *United States v. Titanium Metals Corporation* and shall reference the civil action number and the Department of Justice case number, 90-7-1-09824, to the United States in accordance with Section XIII (Notices), by email to acctsreceivable.CINWD@epa.gov and by mail to:

EPA Cincinnati Finance Office
26 Martin Luther King Drive
Cincinnati, Ohio  45268

10.     Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VII (Stipulated Penalties) in calculating its federal, state, or local income tax.

V.  COMPLIANCE REQUIREMENTS

11.     Prohibition on Discharge, Treatment, Storage, and Disposal of Hazardous Waste in HP-1 and HP-6 Surface Impoundments.  Unless authorized by a valid RCRA permit, TIMET shall not discharge RCRA hazardous waste to, or store or dispose of RCRA hazardous waste in, the two existing surface impoundments (HP-1 and HP-6), other surface impoundments, or on land.

12.     Site-Wide Investigation and Cleanup.  TIMET shall undertake a Site-Wide Investigation of the Facility by which TIMET shall investigate and characterize the nature and extent of PCB contamination at the Facility.  EPA agrees that TIMET has performed an investigation of the Facility pursuant to a Site-Wide Investigation Work Plan which was approved by NDEP and which provides for characterization of PCB contamination at the Facility.

a.     TIMET has and shall follow appropriate EPA analytical methods, regulations and guidance in collecting and analyzing soil, solid, liquid, air, and wipe samples while implementing the Site-Wide Investigation, as well as for assessing human health risks. The Site-Wide Investigation Work Plan documents the procedures and provides a specific schedule that Defendant is following to conduct the Site-Wide Investigation and assess the collected data.  The Site-Wide Investigation Work Plan includes, but is not limited to, the following elements, as applicable: site background, investigation scope, sampling and analysis plan (including a field sampling plan and quality assurance project plan), detailed project schedule, and site-specific health and safety plan to be followed throughout the field work.  EPA

CONSENT DECREE

will review the results of TIMET's investigation of the Facility to determine whether, for EPA's purposes, the investigation adequately characterized the nature and extent of PCB contamination at the Facility, as determined by EPA.

      b.     Within sixty (60) Days of the Effective Date of this Consent Decree, TIMET shall submit to EPA, for EPA's consideration in accord with Paragraph 14, a Site-Wide Investigation Report which details the findings of the Site-Wide Investigation and presents an assessment of the presence of PCBs and all other site contaminants found where PCBs were discovered.  The Site-Wide Investigation Report must, at a minimum, include:

          i.     The nature of the contamination, including the kinds of materials or media contaminated;

          ii.     A summary of the procedures used to collect and analyze samples to characterize potentially contaminated and adjacent areas and materials, including any deviations from the Site-Wide Investigation Work Plan.  The summary must include sample collection and analysis dates;

          iii.     Tables and site maps showing PCB concentrations measured during and before the Site-Wide Investigation (as appropriate), as well as other contaminants where PCBs have been found to occur;

          iv.     An exposure pathway analysis, and, if applicable, qualitative or quantitative assessment of the human health risks (carcinogenic and non-carcinogenic) at the site due to PCBs and other site contaminants found to occur where PCBs are identified;

          v.     A detailed schedule for the remaining Work at the Facility; and

          vi.     A written certification signed by an authorized representative of TIMET that all sampling plans, sample collection procedures, sample preparation procedures,

extraction procedures, and instrumental/chemical analysis procedures used to assess or characterize the PCB contamination at the Facility are on file at the location designated in the certificate, and are available for EPA inspection.

Once approved in whole or in part, the Site-Wide Investigation Report shall be incorporated into and enforceable as a part of this Decree.

c.      If applicable, site cleanup/remediation shall achieve a risk reduction from carcinogenic contaminants present at the site above regional background levels such to ensure that the excess risk of cancer (relative to background) to an individual exposed over a lifetime falls within the range of one-in-a-million ($10^{-6}$) to one-in-ten thousand ($10^{-4}$) with $10^{-6}$ as a point of departure when developing site-specific media cleanup standards and remedial alternatives. Cumulative risk for non-carcinogens shall not exceed a hazard index (HI) of one (1).

d.      Upon EPA's approval of the Site-Wide Investigation Report, pursuant to Paragraph 14, TIMET shall submit a Site Cleanup/Remediation Plan (if applicable) for the Facility, in accordance with the schedule approved by EPA in the Site-Wide Investigation Report.

e.      Following EPA's approval, pursuant to Paragraph 14, of the Facility's Site Cleanup/Remediation Plan, if applicable, TIMET will implement the Site Cleanup/Remediation Plan, in accordance with the schedule approved by EPA.

f.      Following completion of the Work described in the Site Cleanup/ Remediation Plan (if applicable), and consistent with the EPA-approved schedule contained in the Site Cleanup/Remediation Plan (if applicable), TIMET shall submit to EPA a Final Site Cleanup Report for EPA's consideration, pursuant to Paragraph 14.  Once approved, the Final Site Cleanup Report shall be incorporated into and enforceable as a part of this Decree.

CONSENT DECREE

g.     EPA and TIMET acknowledge and agree that the Site-Wide Investigation, the Site Cleanup/Remediation Plan, and the Final Site Cleanup Report shall be administered in coordination with NDEP and that EPA will coordinate with NDEP in terms of the schedule, phasing the approach to the investigation, and remediation of the site.  While all the Work and schedules, as described herein, must be completed to EPA's satisfaction and subject to EPA's approval, in EPA's sole discretion, EPA agrees that it will coordinate its review of documents with NDEP and will communicate its comments on documents, if any, directly to NDEP, in addition to TIMET.

13.     <u>Reporting, Certification, and Record Maintenance</u>.   Upon the first to occur after the Effective Date of this Decree, either January 31 or July 31, TIMET shall report to EPA those manufacturing processes at the Facility which TIMET believes qualify as excluded manufacturing processes pursuant to 40 C.F.R. §§ 761.1(f) and 761.3.  TIMET shall transmit to EPA a letter notifying EPA of the number, type, and location(s) of excluded manufacturing processes in which PCBs are generated.  In addition, TIMET shall certify: (a) TIMET's compliance with all applicable requirements of 40 C.F.R. §§ 761.1(f) and 761.3, as verified by actual monitoring of PCB levels, including any applicable requirements for air and water releases and process waste disposal; (b) that TIMET is preserving and maintaining at the Facility the documentation supporting such determination(s) of compliance; (c) that TIMET will continue to preserve and maintain at the Facility all documentation supporting such determination(s) of compliance until three (3) years after any PCB manufacturing process (regardless of whether the manufacturing is inadvertent or the process is an excluded manufacturing process) ceases, including the underlying monitoring records, the method of analysis, the results of the analysis, a description of the sampling matrix, the name of the analyst(s), the date and time of the analysis,

and the numbers for the lots from which the samples are taken; and (d) that TIMET will repeat this certification process, including each element described in this Paragraph 13, if process conditions are ever significantly modified to make the previous certification no longer valid.

14. <u>Approval of Deliverables</u>.  After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Decree, including, but not limited to, the Site-Wide Investigation Report, the Site Cleanup/Remediation Plan, and the Final Site Cleanup Report, EPA shall in writing:  (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

15. If the submission is approved pursuant to Paragraph 14.a, Defendant shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If the submission is conditionally approved or approved only in part, pursuant to Paragraph 14.b or Paragraph 14.c, Defendant shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to Defendant's right to dispute only the specified conditions or the disapproved portions, under Section IX (Dispute Resolution).  With respect to all plans, reports or documents submitted to EPA under Paragraph 12, TIMET shall submit electronically to NDEP all approved or conditionally approved plans, reports, or other documents, or the approved portions thereof, and TIMET hereby consents to NDEP posting such approved or conditionally approved plans, reports, or other documents, or the approved portions thereof, on NDEP's website related to the BMI Complex, should NDEP choose to do so.

16.     If the submission is disapproved in whole or in part pursuant to Paragraph 14.c or Paragraph 14.d, Defendant shall, within forty-five (45) Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs.  If the resubmission is approved in whole or in part, Defendant shall proceed in accordance with Paragraph 15.

17.     Any stipulated penalties applicable to the original submission, as provided in Section VII (Stipulated Penalties) of this Decree, shall accrue during the forty-five (45) Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendant's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable, subject to the provisions of Section VII (Stipulated Penalties), notwithstanding any subsequent resubmission.

18.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require Defendant to correct any deficiencies, in accordance with the preceding Paragraphs, or may itself correct any deficiencies, subject to Defendant's right to invoke dispute resolution and the right of EPA to seek stipulated penalties as provided in the preceding Paragraphs.

## VI.  REPORTING REQUIREMENTS

19.     Defendant shall submit the following reports:

a.     Starting after lodging of this Consent Decree and continuing for three (3) years from the lodging of this Decree, Defendant shall submit biannually to EPA on or before the January 31 of each calendar year and on or before July 31 of each calendar year a report for the

CONSENT DECREE

preceding half year that shall include air, water, and process waste sampling data demonstrating TIMET's compliance with 40 C.F.R. §§ 761.1(f) and 761.3.  The report and certification provided in accordance with Paragraph 13 shall constitute the first of six reports required by this Paragraph 19.a.

    b. Each report submitted pursuant to this Paragraph shall include a description of any non-compliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and the remedial steps taken, or to be taken, to prevent a recurrence of such violation or minimize the impact of such violation.

   20. Notwithstanding the requirement of Paragraph 19.b, if Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendant shall notify the United States of such violation and its likely duration, in writing, within ten (10) business Days of the Day Defendant first becomes aware of the violation or potential violation, with an explanation of the violation's likely cause and the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report.  Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within thirty (30) Days of the Day Defendant becomes aware of the cause of the violation or within ninety (90) Days of the notification, whichever is earlier.  Nothing in this Paragraph or Paragraph 21 relieves Defendant of its obligation to provide the notice required by Section VIII (Force Majeure).

   21. Whenever any violation of this Consent Decree or any other event affecting Defendant's performance under this Decree, or activities at the Facility governed by this Consent Decree, may pose an immediate threat to the public health or welfare or the environment,

Defendant shall notify EPA orally or by electronic or facsimile transmission as soon as possible, but no later than twenty-four (24) hours after Defendant first becomes aware of the violation or event.  This procedure is in addition to the requirements set forth in Paragraphs 19-20.

22.     All reports pursuant to this Section shall be submitted to the persons designated in Section XIII (Notices).

23.     Each report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

24.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by TSCA or RCRA or their implementing regulations, or by any other federal, state, or local law, regulation, approval, permit, or other requirement.

25.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

26.     Following EPA's approval of the Final Site Cleanup Report as required in Paragraph 12.f  and TIMET's satisfactory completion of the reporting required in this Section VI (Reporting Requirements), TIMET shall have completed the Work required under this Decree,

although certain obligations under this Decree, such as the requirements of Section X (Information Collection and Retention), will continue.

## VII.  <u>STIPULATED PENALTIES</u>

27.     Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section VIII (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

28.     <u>Late Payment of Civil Penalty</u>.  If Defendant fails to pay the civil penalty required to be paid under Section IV (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $5,000 per Day for each Day that the payment is late for the first ten (10) Days, together with Interest.  Thereafter, TIMET shall pay $10,000 per Day for each Day that the payment is late, with Interest.  Late payment of the civil penalty shall be made in accordance with Paragraph 9. Stipulated penalties shall be paid in accordance with Paragraphs 31, 32, 34 and 35.  All transmittal correspondence shall state that any such payment is for late payment of the civil penalty due under this Consent Decree or for stipulated penalties for late payment, as applicable, and shall include the identifying information set forth in Paragraph 9.

29.     <u>Compliance Milestones</u>.  The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in Section V (Compliance Requirements):

| Penalty per Violation per Day | Period of Non-Compliance |
| --- | --- |
| $1,000 | 1st through 14th Day |
| $2,500 | 15th through 30th Day |

CONSENT DECREE

$5,000                                    31st Day and beyond

30.     Reporting Requirements.  The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VI (Reporting Requirements):

| Penalty per Violation per Day | Period of Non-Compliance |
| --- | --- |
| $1,000 | 1st through 14th Day |
| $2,000 | 15th through 30th Day |
| $3,000 | 31st Day and beyond |

31.     Subject to the provisions of Paragraph 17, stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

32.     Subject to dispute resolution as described below, Defendant shall pay any stipulated penalty within thirty (30) Days of receiving the United States' written demand.

33.     The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

34.     Stipulated penalties shall continue to accrue as provided in Paragraphs 29 and 30 during any dispute resolution, but need not be paid until the following:

        a.      If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with Interest, to the United States within thirty (30) Days of the effective date of the agreement or the receipt of EPA's decision or order.

CONSENT DECREE

b.      If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with Interest, within sixty (60) Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.      If any Party appeals the Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with Interest, within fifteen (15) Days of receiving the final appellate court decision.

35.      Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 9, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

36.      If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for Interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

37.      Subject to the provisions of Section XI (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Decree or applicable law.

## VIII.  FORCE MAJEURE

38.      "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of

Defendant's contractors that delays or prevents the performance of any obligation under this Decree despite Defendant's best efforts to fulfill the obligation.  The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible.  "Force majeure" does not include Defendant's financial inability to perform any obligation under this Decree.

39.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission as soon as possible, as provided in Section XIII (Notices), but not later than seventy-two (72) hours after the time when Defendant first knew that the event might cause a delay.  Within seven (7) Days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay, the anticipated duration of the delay, all actions taken or to be taken to prevent or minimize the delay, a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay, Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim, and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health or welfare, or the environment.  Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendant shall be deemed to know of any circumstance of which

Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

40.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

41.      If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

42.     If Defendant elects to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), it shall do so no later than fifteen (15) Days after receipt of EPA's notice.  In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 39 and 40. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Decree identified to EPA and the Court.

IX.  DISPUTE RESOLUTION

43.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising

under or with respect to this Decree.  However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of Defendant that have not been disputed in accordance with this Section.  Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

44.    <u>Informal Dispute Resolution</u>.  Any dispute subject to dispute resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when the United States receives from Defendant a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed twenty (20) Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within twenty (20) Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

45.    <u>Formal Dispute Resolution</u>.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in Paragraph 44, by serving on EPA Region IX's Director of the Enforcement Division ("Director") a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.  The Statement of Position shall specify Defendant's position as to whether formal dispute resolution should proceed under Paragraph 49.a or Paragraph 49.b.

46.    The United States shall provide its written Statement of Position to the Director and shall serve a copy on Defendant within forty-five (45) Days of receipt of Defendant's

Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall specify its position as to whether formal dispute resolution should proceed under Paragraph 49.a or Paragraph 49.b.  Within sixty (60) Days of receipt of the United States' Statement of Position, the Director shall issue a written decision resolving the formal dispute.  The Director's written decision resolving the formal dispute shall be binding on Defendant, unless Defendant files a motion for judicial review of the Director's written decision in accordance with Paragraph 47.

47.    Defendant may seek judicial review of the Director's written decision resolving the formal dispute by filing with the Court and serving on the United States, in accordance with Section XIII (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within ten (10) Days of receipt of the Director's written decision resolving the formal dispute.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of this Decree.

48.    The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

49.    <u>Standard of Review</u>.

a.    <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise provided in this Consent Decree, in any dispute brought under this Section pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules, or any

other items requiring approval by EPA under this Decree; the adequacy of the performance of Work undertaken pursuant to this Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

> b.      Other Disputes.  Except as otherwise provided in this Consent Decree, in any other dispute brought under this Section, Defendant shall bear the burden of demonstrating that its position complies with this Decree and better furthers the objectives of this Decree.

50.      The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of non-compliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 34.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## X.  INFORMATION COLLECTION AND RETENTION

51.      The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into the Facility at all reasonable times, upon presentation of credentials or other valid governmental identification, to:

> a.      monitor the progress of activities required under this Decree;

> b.      verify any data or information submitted to the United States in accordance with the terms of this Decree;

      c.      obtain samples and, upon request, splits of any samples taken by

Defendant or its representatives, contractors, or consultants;

      d.      obtain documentary evidence, including photographs and similar data; and

      e.      assess Defendant's compliance with this Decree.

52.      Upon request, Defendant shall provide EPA or its authorized representatives splits of any samples taken by Defendant.  Upon request, EPA shall provide Defendant splits of any samples taken by EPA.

53.      Until five (5) years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) that are in, or come into, its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

54.      At the conclusion of the information-retention period provided in Paragraph 53, Defendant shall notify the United States at least ninety (90) Days prior to the destruction of any documents, records, or other information subject to the requirements of Paragraph 53 and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA.  Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following:  (1) the title of the document,

record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendant. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

55. Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

56. This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XI. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

57. This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging of this Decree. This Consent Decree also resolves EPA's administrative claims for civil penalties under TSCA Section 16(a), 15 U.S.C. § 2615(a), for those violations alleged in the April 2009 NOV, through the date of lodging of this Decree, of Sections 6(e) and 15 of TSCA, 15 U.S.C. §§ 2605(e) and 2614, respectively, and the regulations found at 40 C.F.R. Part 761, *et seq.,* arising from

Defendant's alleged illegal manufacture, disposal, and storage of PCBs, and failure to clean up PCB waste at the Facility in Henderson, Nevada.

58.    The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under TSCA or RCRA or those statutes' implementing regulations, or under other federal laws or regulations, except as expressly specified in Paragraph 57.  The United States further retains all authority and reserves all rights to take any and all actions authorized by law to protect human health and the environment, including all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, the Facility, whether related to the violations addressed in this Decree or otherwise.

59.    In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, or other appropriate relief relating to the Facility, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 57.

60.    This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits, and Defendant's compliance with this Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The

CONSENT DECREE

United States does not, by its consent to the entry of this Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Decree will result in compliance with TSCA or RCRA, or with any other provisions of federal, state, or local laws, regulations, or permits.

61.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties not party to this Decree, nor does it limit the rights of third parties not party to this Decree against Defendant, except as otherwise provided by law.

62.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Decree.

## XII.  <u>COSTS</u>

63.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XIII.  <u>NOTICES</u>

64.     Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree in accordance with Sections V (Compliance Requirements) and VI (Reporting Requirements), they shall be made electronically, unless otherwise requested by EPA, and addressed as follows:

<u>To the United States by email</u>:

eescasemanagement.enrd@usdoj.gov
Re: DJ # 90-7-1-09824

CONSENT DECREE

<u>To the United States by mail</u>:

EES Case Management Unit
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
Re: DJ # 90-7-1-09824

<u>To EPA Region IX</u>:

Mr. Thomas B. Butler
Office of Regional Counsel
U.S. Environmental Protection Agency
75 Hawthorne Street (ORC-3)
San Francisco, CA  94105
Phone:  (415) 972-3869
Fax: (415) 947-3570
Butler.Thomas@epa.gov

And

Mr. Christopher Rollins
Project Manager and Environmental Protection Specialist
U.S. Environmental Protection Agency
75 Hawthorne Street (ENF-2-2)
San Francisco, CA  94105
Phone:  (415) 947-4166
Fax: (415) 947-3530
Rollins.Christopher@epa.gov

<u>To Defendant</u>:

Titanium Metals Corporation
Richard A. Pfarrer III, PE
Director, Environment, Health and Safety
181 North Water Street
PO Box 2128
Henderson, NV  89015
Phone:  (702) 566-4453
Richard.Pfarrer@TIMET.com

And

CONSENT DECREE

Peter L. Serrurier
Stoel Rives LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR  97204-1268
Phone:  (503) 294-9190
plserrurier@stoel.com

65.     Either Party may, by written notice to the other Party, change its designated notice recipient or notice address.

66.     Notices submitted pursuant to this Section shall be deemed submitted upon receipt, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIV.  EFFECTIVE DATE

67.     The Effective Date of this Consent Decree shall be the date upon which this Decree is entered by the Court or a motion to enter this Decree is granted, whichever occurs first.

## XV.  RETENTION OF JURISDICTION

68.     The Court shall retain jurisdiction over this case until termination of this Consent Decree pursuant to Section XVII (Termination) for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections IX (Dispute Resolution) and XVI (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XVI.  MODIFICATION

69.     Except as specifically provided for herein, there shall be no modifications or amendments of this Consent Decree without the written agreement of the Parties to this Decree. The terms of this Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

CONSENT DECREE

28

70.     Any requests for a modification or revision of an approved deliverable, including a schedule contained therein, must be made in writing.  Such requests must be timely and provide justification for any proposed modification or revision to the deliverable or schedule. The EPA Project Manager and EPA Enforcement Division managers are each authorized to agree to such proposed changes in an approved deliverable, including schedules contained therein, though EPA has no obligation to approve such requests.  Any agreement by EPA to modify or revise an approved deliverable, including a schedule contained therein, must be in writing.  Any approved modification or revision of an approved deliverable, including a schedule contained therein, shall be incorporated by reference into this Decree, but shall not constitute a material change to this Decree requiring signature of the Parties or approval of the Court pursuant to Paragraph 69.

71.     Any disputes concerning modification of this Consent Decree shall be resolved pursuant to Section IX (Dispute Resolution); provided, however, that, instead of the burden of proof provided by Paragraph 49, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Fed. R. Civ. P. 60(b).

## XVII.  TERMINATION

72.     After Defendant has completed the requirements of Section V (Compliance Requirements), has thereafter maintained continuous satisfactory compliance with this Decree, has complied with all other requirements of this Decree, and has paid the civil penalty and any accrued stipulated penalties as required by this Decree, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

CONSENT DECREE

73.     Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that this Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating this Decree.

74.     If the United States does not agree that this Decree may be terminated, Defendant may invoke Section IX (Dispute Resolution).  However, Defendant shall not seek formal dispute resolution of any dispute regarding termination, under Paragraph 45, until ninety (90) Days after service of its Request for Termination.

## XVIII.  PUBLIC PARTICIPATION

75.     This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that this Decree is inappropriate, improper, or inadequate.  Defendant consents to entry of this Decree without further notice and agrees not to withdraw from or oppose entry of this Decree by the Court or to challenge any provision of this Decree, unless the United States has notified Defendant in writing that it no longer supports entry of this Decree.

## XIX.  SIGNATORIES/SERVICE

76.     Each undersigned representative of Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice

certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

77.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Decree and to waive the formal service requirements set forth in Fed. R. Civ. P. 4 and 5 and any applicable Local Rules of this Court, including, but not limited to, service of a summons.

## XX.  INTEGRATION

78.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding between the Parties with respect to the settlement embodied in this Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than the appendices which are attached to and incorporated in this Consent Decree, and any submissions approved in the future by EPA pursuant to Paragraph 14 and incorporated by reference into this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXI.  FINAL JUDGMENT

79.     Upon approval and entry of this Consent Decree by the Court, this Decree shall constitute a final judgment of the Court as to the United States and Defendant.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

## XXII.  APPENDICES

80.     The following appendices are attached to and are part of this Consent Decree:

CONSENT DECREE

"Appendix 1" is the April 2009 NOV.

"Appendix 2" is the Map of HP-1 and HP-6.

Dated and entered this ___2nd___ day of ___July_____, 2014.

_____

[  MIRANDA M. DU          ]
UNITED STATES DISTRICT JUDGE
District of Nevada

CONSENT DECREE

WE HEREBY CONSENT to the entry of this Consent Decree in *United States v. Titanium Metals Corporation.*

FOR PLAINTIFF UNITED STATES OF AMERICA:

Date: 4/23/14

ROBERT G. DREHER
Acting Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Date: 4/29/14

ELISE S. FELDMAN
Senior Counsel
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
301 Howard Street
San Francisco, CA 94105
Telephone: 415-744-6470
Facsimile: 415-744-6476
Email: elise.feldman@usdoj.gov


DANIEL G. BOGDEN
United States Attorney
District of Nevada

ROGER W. WENTHE
Assistant United States Attorney
United States Attorney's Office
333 Las Vegas Boulevard South, Suite 5000
Las Vegas, NV 89101
Telephone: 702-388-6336
Facsimile: 702-388-6787
Email: roger.wenthe@usdoj.gov

CONSENT DECREE

WE HEREBY CONSENT to the entry of the Consent Decree in *United States v. Titanium Metals Corporation*, subject to the public notice requirements of 28 C.F.R. § 50.7.

FOR PLAINTIFF UNITED STATES OF AMERICA:

Date: 5/7/14

CYNTHIA GILES
Assistant Administrator
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
Washington, DC 20460

WE HEREBY CONSENT to the entry of the Consent Decree in *United States v. Titanium Metals Corporation.*

FOR PLAINTIFF UNITED STATES OF AMERICA:

Date: *May 12, 2014*

JARED BLUMENFELD
Regional Administrator
Pacific Southwest Division (Region IX)
United States Environmental Protection Agency
San Francisco, CA 94105

Date: *April 25, 2014*

THOMAS B. BUTLER
Assistant Regional Counsel
Office of Regional Counsel
Pacific Southwest Division (Region IX)
United States Environmental Protection Agency
San Francisco, CA 94105
Telephone: 415-972-3869
Facsimile: 415-947-3570
Email: butler.thomas@epa.gov

CONSENT DECREE

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. Titanium Metals Corporation*

FOR DEFENDANT TITANIUM METALS CORPORATION:

Date: 3/26/2014

JAMES R. PIERON
President
Titanium Metals Corporation
100 Titanium Way
Toronto, OH  43964
Jim.Pieron@TIMET.com

CONSENT DECREE

# Appendix 1

Notice of Violation

Sent by EPA to TIMET on April 15, 2009



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**REGION IX**
**75 Hawthorne Street**
**San Francisco, CA 94105**

APR 1 5 2009

In reply, refer to WST-3

<u>Notice of Violation – Resource Conservation and Recovery Act and Toxic Substances</u>
<u>Control Act; and Request for Information Pursuant to Section 3007(a) of the Resource</u>
<u>Conservation and Recovery Act</u>

Craig D. Galli, Partner
Holland & Hart, LLP
60 East South Temple, Suite 2000
Salt Lake City, UT 84111

Re:    <u>Titanium Metals Corporation, Henderson, Nevada</u>
       <u>EPA Identification Number NVD 009 562 471</u>

Dear Mr. Galli:

        The United States Environmental Protection Agency ("EPA") has identified violations of
the Resource Conservation and Recovery Act ("RCRA") and the Toxic Substances Control Act
("TSCA") at the Titanium Metals Corporation ("Timet") facility located in Henderson, Nevada,
with EPA Identification Number NVD 009 562 471 (the "Facility"). This letter lists the specific
areas of noncompliance and sets out a schedule for Timet to demonstrate current compliance.
Also included below is a request for information pursuant to Section 3007 of RCRA, 42 U.S.C.
§ 6927. Please note that Section 3008 of RCRA, 42 U.S.C. § 6928, and Section 16 of TSCA, 15
U.S.C. § 2615, authorize civil penalties for each day that a violation of the applicable provisions
of RCRA or TSCA continues.

        The violations of the RCRA hazardous waste management and TSCA polychlorinated
biphenyls ("PCBs") requirements described below are based on information gathered as part of
EPA's compliance investigation, including on-site inspections and sampling at the Facility on
September 13 – 15, 2005, October 17 – 19, 2005, February 7, 2006, and September 16 – 18,
2008. Copies of the inspection reports created by EPA as part of its investigation of the Facility
are enclosed for your information and response. The reports describe conditions at the Facility
during the time of the inspection and identify areas of noncompliance with RCRA and TSCA
regulations and potential violations of the State of Nevada authorized program under the RCRA

1

hazardous waste management requirements. Any omissions in these reports shall not be construed as a determination of compliance with any other applicable regulation.

**Notice of Violation**

**RCRA Violations.** Pursuant to Section 3008 of RCRA, 42 U.S.C. § 6928, you are required to correct the identified areas of noncompliance and to submit documentation of their correction to the EPA. The violations are:

1. Failure to make a waste determination by not properly characterizing processing waste streams discharged into HP-1 from the purification vent system ("PVS") scrubber and from the other process wastewater ("OPW") tank in violation of Nevada Administrative Code ("NAC") 444.8632 [40 C.F.R. § 262.11].

2. Treatment, storage or disposal of "hazardous waste" without a permit by disposing of PVS scrubber liquid and effluent from the OPW tank into surface impoundment HP-1 in violation of NAC 444.8632 [40 C.F.R. § 270.1(c)].

3. Improper land disposal of waste exhibiting hazardous waste characteristics into HP-1 in violation of NAC 444.8632 [40 C.F.R. § 268.40, as referenced by 40 C.F.R. § 262.11(d)].

4. Failure to label or mark clearly containers used to store used oil with the words "Used Oil" in violation of NAC 444.8632 [40 C.F.R. § 279.22(c)(1)].

5. Failure to clearly label or mark containers of waste lamps containing mercury with one of the following phrases, "Universal waste-lamps," "Waste lamps," or "Used lamps" in violation of NAC 444.8632 [40 C.F.R. § 273.14(e)].

6. Failure to update emergency coordinator information in violation of NAC 444.8632 [40 C.F.R. § 265.54(d)].

7. Failure to inspect free board levels in surface impoundment HP-1 at least once each operating day in violation of NAC 444.8632 [40 C.F.R § 265.226(a)(1)].

8. Failure to implement a ground-water monitoring program capable of determining the impact of HP-1 on the quality of groundwater in the uppermost aquifer in violation of NAC 444.8632 [40 C.F.R. § 265.90(a)].

**TSCA Violations.** Pursuant to Section 6(e) of TSCA, 15 U.S.C. § 2605, you are also required to correct the identified areas of noncompliance regarding the management and disposal of PCBs. The violations are:

1. Failure to obtain a TSCA exemption prior to manufacturing PCBs in the United States in violation of 40 C.F.R. § 761.20(b).

2. Improper disposal of PCBs, in Timet's dual pipeline system inside the Facility's Magnesium Recovery Building, in the perimeter trench outside the Magnesium Recovery Building, and in

the soil located in Landfill J-2, each in violation of 40 C.F.R. §§ 761.50(a)(4) and 50(b)(3).

3. Storage of two PCB-contaminated transformers (Serial Numbers C75119 and G75688) for more than five (5) years without EPA approval in violation of 40 C.F.R. § 761.35(b).

4. Failure to mark three distinct PCB storage areas with the PCB $M_L$ label, each in violation of 40 C.F.R. § 761.40(a)(10).

5. Failure to mark a drum designated as PCB containing waste with the PCB $M_L$ label in violation of 40 C.F.R. § 761.40(a)(1).

6. Failure to manifest TSCA regulated PCBs off-site for the purposes of disposal prior to July of 2006 as required by 40 C.F.R. § 761.207(a).

7. Failure to dispose of PCB-contaminated transformers within one-year after the waste was stored for the purpose of reuse, storage without adequate walls and a roof to prevent rain water from contacting the PCBs or PCB Items, and failure to note the dates removed from service on two 55-gallon drums of anode dust, in violation of 40 C.F.R. §§ 761.65(a)(1), (b)(1) and (c)(1).

8. Failure to notify EPA of PCB waste activities prior to engaging in PCB waste handling activities by not filing EPA Form 7710-53 with EPA in violation of 40 C.F.R. § 761.205(a).

By copy of this letter, the EPA is providing the State of Nevada with notice of the referenced violations of the RCRA hazardous waste and TSCA management requirements.

**Request for Information**

The EPA is also seeking information concerning past and current operations at the Facility. Under the provisions of Section 3007(a) of RCRA {42 U.S.C. § 6927(a)}, the EPA may require persons subject to RCRA to furnish information necessary for the EPA to administer the Act. The information requested will supplement observations made by the EPA inspection team and the follow-up information provided by Timet thereafter. Therefore, pursuant to the EPA's authority under Section 3007(a) of RCRA, Timet is requested to submit to the EPA the following information within thirty (30) calendar days from the date of your receipt of this letter:

1. During what time periods and in what quantities did Timet release hazardous waste into HP-1? Please provide documentation of all hazardous waste released to HP-1 from 2005 to the present.

2. Did Timet remove any substances from the Facility's HP-1 unit or decontaminate the facility's HP-1 unit between 2005 and 2008? If so, please submit all records pertaining to the cleanup of the unit including but not limited to any waste determination documents, analytical data, hazardous waste manifests or transportation documents related to the cleanup.

3. In 2008, EPA inspectors observed rips and holes in HP-1's liner system near the main outfall. Please describe any action taken since the EPA inspection to repair the HP-1 liner system and

3

submit substantiating documentation of any such repair of the HP-1 liner system and documentation that the HP-1 liner is adequate to contain releases and prevent releases to the environment.

4. Did Timet remove or decontaminate the compressor pad located adjacent to and beneath the Facility's anode baghouse between 2005 and 2008? If so, please submit all records pertaining to the removal and/or cleanup of the pad, including but not limited to any PCB analytical data, hazardous waste manifests, bills of lading, or plans related to the cleanup.

5. In 2008, EPA inspectors observed historic filter cake material stored in Timet's filter cake bunker. Please describe any actions taken since the EPA inspection to ensure that a waste determination was performed on the historic filter cake material for the presence of PCBs and other hazardous waste constituents, and that the historic waste was fully removed and disposed of properly.

Section 3008 of RCRA {42 U.S.C. § 6928} authorizes the initiation of a civil enforcement proceeding for failure to respond fully to the information request set out in this letter. Section 3008 also authorizes criminal prosecution for knowingly making a false statement or omitting material information.

This request for information is not subject to review by the Office of Management and Budget ("OMB") under the Paperwork Reduction Act because it is not an "information collection request" within the meaning of 44 U.S.C. §§ 3502(3), 3507, 3512, and 3518(c)(1) {5 C.F.R. §§ 1320.3(c), 1320.4, and 1320.6(a)}. Furthermore, it is exempt from OMB review under the Paperwork Reduction Act because it is directed to fewer than ten persons {44 U.S.C. § 3502(4), (11); 5 C.F.R. §§ 1320.4 and 1320.6(a)}.

Confidential Business Information

The EPA routinely provides copies of inspection reports to state agencies, and upon request, to the public. Such releases are handled according to the Freedom of Information Act regulations, 40 C.F.R. Part 2, Subpart B. For any portion of the information included in this inspection report which is entitled to confidential treatment, please assert a confidentiality claim in accordance with 40 C.F.R. § 2.203(b). If the EPA determines that the information so designated meets the criteria set forth in 40 C.F.R. § 2.208, the information will be disclosed only to the extent, and by means of the procedures specified in 40 C.F.R. Part 2, Subpart B. As described in 40 C.F.R § 2.203(a)(2), the EPA will construe the failure to furnish a confidentiality claim within fourteen (14) calendar days from the date of your receipt of this letter as a waiver of that claim, and information may be made available to the public by the EPA without further notice.

Your certification of correction of the areas of noncompliance identified in this notice of violation must be included in a response letter signed by a duly authorized official of Timet. Your response should also address any other areas or activities of concern identified in the enclosed reports. Your responses to the Notice of Violation and the 3007 letter is due within thirty (30) calendar days from the date of your receipt of this letter and shall be addressed to:

Christopher Rollins
Mailcode: WST-3
RCRA Enforcement Office
U.S. Environmental Protection Agency
75 Hawthorne Street
San Francisco, CA 94105

Documentation of your return to compliance may consist of, among other things, photographs, manifests, and revised records. Where compliance cannot be achieved within thirty (30) calendar days, you must provide to the EPA the reasons for the delay, a description of each corrective action planned, and a schedule of when each corrective action will be taken.

If you have questions related to the enclosed inspection reports or this letter, please contact Letitia Moore in the Office of Regional Counsel ("ORC") at (415) 972-3928.

Sincerely,

Loren Henning, Manager
RCRA Enforcement Office

Enclosures

cc:

Craig Wilkinson (w/o enclosures and sent regular mail)
Western Regional Safety Manager
Titanium Metals Corporation
P.O. Box 2128
Henderson, NV 89009

Michael R. Richardson (w/o enclosures and sent regular mail)
Supervisor for the Bureau of Waste Management
Nevada Division of Environmental Protection
2030 E. Flamingo Ave, Ste. 230
Las Vegas, NV 89119

Eric Noack (with enclosures and sent Fed Ex)
Bureau Chief
Nevada Division of Environmental Protection
901 S. Stewart Street, Ste. 4004
Carson City, NV 89701-5249

# Appendix 2

Map of HP-1 and HP-6 Surface Impoundments

